William J. Robinson (CA Bar No. 83729)
email: wrobinson@foley.com
Jean-Paul Ciardullo (CA Bar No. 284170)
email: jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Telephone: 213.972.4500
Facsimile: 213.486.0065

*Attorneys for*
FLYDIVE, INC., DEAN O'MALLEY,
JETPACK ENTERPRISES, LLC and
JETPACK ENTERPRISES – SAN DIEGO, LLC

**FILED**

MAY 22, 2017

CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY MKU
Deputy Clerk, U.S. District Court

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JLIP, LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>JETPACK ENTERPRISES, LLC<br>JETPACK ENTERPRISES-SAN DIEGO, LLC, and DEAN O'MALLEY<br><br>    *Defendants.* | Case No: 8:16-cv-1607-CJC-JCG<br><br>**FLYDIVE INC.'s**<br>**FIRST AMENDED COMPLAINT**<br>**FOR DECLARATORY JUDGMENT**<br>**OF NON-INFRINGEMENT AND**<br>**INVALIDITY** |
| FLYDIVE, INC..<br><br>    *Plaintiff,*<br><br>v.<br><br>ZAPIP, LLC and ZIPH2O SAS,<br><br>    *Defendants.* | |

FlyDive, Inc. ("FlyDive") alleges as follows for its First Amended Declaratory Judgment Complaint against ZapIP LLC ("ZapIP") and ZipH2O SAS ("ZipH2O") (collectively, "Zapata Industries"):

## JURISDICTION

1. This case is a patent declaratory judgment action over which the district courts have original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202. In particular, an actual controversy now exists between FlyDive and Zapata Industries due to Zapata Industries' assertion of patent infringement claims against FlyDive.

2. This Court has personal jurisdiction over Zapata Industries because Zapata Industries has threatened FlyDive with infringement claims in California, as well as threatened FlyDive's customers elsewhere around the country knowing that the harm from such threats would be felt by FlyDive in California. The Court has already found there to be declaratory judgment jurisdiction as to ZapIP. (*See* Dkt. 43.) ZipH2O is a French company, and may properly be sued in California. As has been represented by ZipH2O legal counsel, ZipH2O was recently assigned all the patents owned by its predecessor, Zapata Holding, but this was a mere "paper reorganization" and ZipH2O is still controlled by the same person, Franky Zapata, and still exists at the exact same address. Therefore, references to ZipH2O herein also encompass its predecessor entity, Zapata Holding. Both ZapIP and ZipH2O are affiliates and have done business jointly under the names "Zapata" and/or "Zapata Industries," which operates the website www.zapata.com (accessible from California) and which has engaged in an extensive nation-wide marketing campaign asserting that all U.S. competitors – including FlyDive – will be sued for patent infringement. Upon information and belief, Zapata Industries consists of holding companies that do not actually have any physical base of operations, and which exist only on paper, further making it proper that they be sued in California where the harm they have inflicted has been felt.

3. Venue is proper in this judicial district pursuant to, without limitation, 28

U.S.C. §§ 1391(b) and 1391(c), and given that overlapping Case No. 8:16-cv-01607-CJC-JCG is already pending here.

## PARTIES

4. FlyDive is a Delaware LLC headquartered in San Diego at 4630 Santa Fe Street, San Diego, CA 92109. FlyDive also has a branch in Newport Beach, California within this District (formerly Jetpack Enterprises LLC).

5. ZapIP is a New Jersey LLC with an address of 811 Church Road #105, Cherry Hill, New Jersey 08002.

6. ZipH2O is a French company with an address of 39 Avenue Saint Roch, Le Rove F-13740, France.

7. On information and belief, ZapIP and ZipH2O are affiliates operating under the d/b/a "Zapata Industries." Zapata Industries is also a d/b/a for one or more other companies that manufacture and distribute jetpack equipment under the Zapata brand name, but upon information and belief, ZapIP and ZipH2O are paper-only patent holding companies that do not manufacture or distribute equipment.

## FACTUAL BACKGROUND

8. This case concerns water-propelled jetpack technology, called "hydroflight."

9. FlyDive is a San Diego-based company that manufactures and distributes recreational hydroflight equipment. FlyDive recently acquired Newport Beach, California-based Jetpack Enterprises LLC, along with Jetpack Enterprises – San Diego LLC (in San Diego) and Jetpack Enterprises – Nevada LLC (in Pahrump, Nevada) (collectively, "Jetpack Enterprises"), making FlyDive the second largest hydroflight company in the United States behind Zapata Industries, which still has a much larger market share. FlyDive's primary product is a foot-mounted hydroflight product called the X-Board, but newly-acquired Jetpack Enterprises is also a distributor of back-mounted jetpacks and a variety of other hydroflight equipment.

10. According to U.S. Patent Office Records, ZapIP is the assignee of the Raymond Li portfolio of patents ("Li Patents"):

- 7,258,301 ("'301 Patent")
- 7,735,772 ("'772 Patent")
- 7,900,867 ("'867 Patent")
- 9,205,905 ("'905 Patent")
- 9,387,914 ("'914 Patent")
- 9,463,876 ("'876 Patent")

11. According to ZipH2O legal counsel, ZipH2O is the assignee of the Franky Zapata portfolio of patents ("Zapata Patents"):

- 8,336,805 ("'805 Patent")
- 8,608,104 ("'104 Patent")
- 8,979,017 ("'017 Patent")
- 8,851,943 ("'943 Patent")
- 9,168,991 ("'991 Patent")

12. Raymond Li is the named inventor of the original hydroflight patents, which claim priority back to 2004. Upon information and belief, Mr. Li drew from observations of Canadian equipment he had seen that allowed objects to be lifted via tethered water pressure hoses. However, Mr. Li could not actually successfully build a jetpack unit at that time, and so travelled to Florida to seek the assistance of experienced water sports equipment professionals. There, Mr. Li befriended Frazier Grandison, a respected water sports equipment expert, as well as other professionals including Keith Paul. Upon information and belief, although Mr. Li had sketched out the bare concept of the jetpack, he did not know how to enable the idea, and relied on Mr. Grandison to conceive of the mechanics and design that actually allowed the device to function.

13. Mr. Li formed a company called Jetlev to commercialize the water-propelled jetpack concept, hiring Mr. Grandison and Mr. Paul as some of his first employees.

14. On or about January 2012, a wealthy investor named Seth Gerszberg formed the twin Delaware entities Jetlev, LLC ("Jetlev") and JLIP LLC ("JLIP"). The companies were formed for the purpose taking over managerial control of Mr. Li's

jetpack business, with Jetlev engaging in operations, and JLIP acting as the holding company for the intellectual property.  Mr. Li, however, did not assign his rights to the jetpack patents to JLIP until 2013.

15.     Mr. Gerszberg is widely known for engaging in major corporate transactions and having ample funding to engage in multiple simultaneous litigations.  He was at one time a top executive of the billion-dollar Marc Ecko clothing brand.

16.     On July 2, 2012, Jetlev and Mr. Li sued Flyboard, Inc., Marathon Florida Keys Kiteboarding L.L.C. and Emerald Coast Flyboard for infringement of the '301, '772 and '867 Patents.  *See* S.D. Fl. Case No. 12-61323.  The accused product in that case was called the "Flyboard," which is a water-propelled hyrdoflight device that expels pressurized water from nozzles attached to the user's feet, rather than from a jetpack worn on the back.  The 2012 Flyboard lawsuit ended in a "walk-away," without any resolution of issues of infringement or validity.

17.     The Flyboard devices were manufactured by Franky Zapata of France, who is the named inventor of the Zapata Patents, which focus primarily on foot-mounted hydroflight equipment.  Mr. Zapata is a successful businessman, and his Zapata-brand equipment disproportionately dominates the hydroflight market worldwide.  After the 2012 lawsuit, Messrs. Gerszberg and Zapata continued a business dialogue about allying to create a single, unified hydroflight company that would own all of the Li Patents and Zapata Patents, and that could use litigation as a tool to eliminate U.S. competition in the hydroflight market.

18.     According to Patent Office records, Mr. Li finally transferred ownership of the '301, '772 and '867 Patents to JLIP in 2013.  Mr. Li later contested this transfer as having been procured by Mr. Gerszberg through fraud and duress, but upon information and belief, relinquished his claims in a settlement with Mr. Gerszberg in early to mid-2016.

19.     On August 6, 2014, JLIP sued Jetpack Enterprises in the Southern District of Florida for infringement of the pre-reexam '772 Patent.  Jetpack Enterprises obtained

dismissal of the case for lack of personal jurisdiction.

20. On May 3, 2016, JLIP sued Jetpack Enterprises (again) for infringement of the '772 Patent and '867 Patent by reason of Jetpack Enterprises' sale of: (1) the Stratospheric X-Jetpack, (2) the Stratospheric Jetblade, (3) the Jetavation Jetovator, (4) the Jetavation Freedom Chair, and (5) the Jetavation Shred Sled.  After initially being filed under C.D. Cal. Case No. 8:15-cv-02113-CJC-JCG (a breach of contract and fraud case filed by Jetpack Enterprises against Jetlev), JLIP's patent claims are now currently pending in this District as C.D. Cal. Case No. 8:16-cv-01607-CJC-JCG ("Jetpack Enterprises Case"), though discovery has not yet commenced.  Jetpack Enterprises had not sold any FlyDive equipment at the time the lawsuit began, but the Stratospheric Jetblade is substantially the same general construction as FlyDive's primary product, the X-Board.  The Stratospheric X-Jetpack product is a "traditional" back-mounted jetpack.

21. Upon information and belief, JLIP did not allege infringement of the other Li Patents in the Jetpack Enterprises case in order to keep them "in reserve" in the event that the '772 or '867 Patents are found invalid, intending to sue upon them in the future and otherwise harass Jetpack Enterprise (now FlyDive).

22. By virtue of having fully acquired all of Jetpack Enterprises, FlyDive has now stepped into the shoes of Jetpack Enterprises in the Jetpack Enterprises Case, and is thus already litigating over some, but not all, of the jetpack patents in this District.

23. In early 2016, Messrs. Gerszberg and Zapata entered into an agreement to form a single company – Zapata Industries, also referred to as "Zapata" – that is intended to dominate the U.S. hydroflight market and leverage the joint Li and Zapata patent portfolios to drive FlyDive and all other competitors out of business.

24. The consolidation effort began with Mr. Gerszberg settling his outstanding lawsuits with Mr. Li and claiming full ownership of the Li Patents for JLIP.

25. In May 2016, Mr. Gerszberg called FlyDive in San Diego personally to have a discussion.  He ended up speaking with FlyDive CEO Christos Nicolaidis.  Mr. Gerszberg stated that he worked with Mr. Zapata, and that he wanted FlyDive to

discontinue its current business and become a Zapata distributor.  When Mr. Nicolaidis refused Mr. Gerszberg's offer, Mr. Gerszberg became aggressive and threatened that he and Mr. Zapata would use the patent portfolio to shut down FlyDive and all of its distributors.

26.  Mr. Gerszberg had taken this same approach in 2013 with hydroflight manufacturer Stratospheric (based in Shanghai), insisting that Stratospheric cease existing operations and effectively become subsumed within Mr. Gerszberg's company. Mr. Gerszberg had JLIP sue Stratospheric in 2014, though that case was ultimately dismissed on procedural grounds without reaching the merits.  Mr. Zapata, too, has threatened Stratospheric with patent infringement lawsuits.  It is believed that the only reason that Messrs. Gerszberg and Zapata have not already sued Stratospheric (or re-sued it, in the case of Mr. Gerszberg) is because of the perceived inconvenience of reaching Stratospheric in China.  FlyDive, by contrast, is an easier target that is based within the United States, and is also now the second largest hydroflight company in the U.S.

27.  On July 28, 2016, JLIP transferred all of the Raymond Li Patents to the newly formed ZapIP, presumably as part of the consolidation with Zapata Industries.

28.  By this point, Messrs. Gerszberg and Zapata had coordinated to create Zapata Industries, which appears to be a joint "doing-business-as" for both of ZapIP and ZipH2O (Mr. Zapata's patent holding company).  A new website at www.zapata.com was created listing all of the Li and Zapata patents as owned exclusively by Zapata Industries. The website also featured the following ominous warning under a tab "Why We Win," stating that Zapata Industries intends to prioritize patent infringement litigation against every hydroflight manufacturer in the U.S. (which includes FlyDive as the most obvious target):

## OUR TECHNOLOGY

- Zapata's™ proprietary balance methodology, algorithms, and patented designs make us the leader in hydro- and air-powered technology.
- Hydroflight products are precursors, and testing grounds, for our Air Jet Craft portfolio.
- Consistently innovating with the release in Q1 2017 of the latest hydro-flyers: the Podracer™ and the Hoverboard by ZR® 2.0.
- **Every hydro-flyer manufacturer in the U.S. is currently infringing on our patents. Zapata™ is prioritizing prosecution.**
- The Zapata Flyboard Air™ platform is the safest, most reliable, lightest, fastest, and least expensive personal flight system ever created.
- Our leadership position has, and will continue to offer, first patent filing as we persistently innovate and expand our business to broader, more diverse markets.

29. On August 18, 2016, Zapata Industries put out a press release stating that it was seeking to be acquired for $30 million by defense contractor Implant Sciences Corporation. In the press release, Mr. Zapata stated "I am excited to announce the acquisition and consolidation of these patent rights," and Gregg Donnenfeld, Chief Operating Officer and General Counsel of Zapata Industries, stated: "**Zapata intends to vigorously enforce its patent portfolios to eradicate the marketplace of all infringing products**."

30. In August 2016, upon information and belief, Zapata Industries used the threat of patent infringement to force the Hydroflight World Championship competition in Florida (a major industry event) to cancel prior arrangements with FlyDive and others, and only use Zapata-branded equipment. FlyDive had been negotiating for months to sponsor the Hydroflight World Championship and have the athletes use FlyDive products

there, but FlyDive was shut out at the last minute because of Mr. Zapata's threats. FlyDive estimates the losses to its business from being excluded from the Hydroflight World Championship to be well over $100,000, along with untold national promotional value it might have had.

31. Messrs. Gerszberg and Zapata have succeeded in frightening equipment distributors and event promoters – including in California – with standing threats that they will be sued for patent infringement if they sell or promote any non-Zapata equipment. Many potential FlyDive business partners refuse to work with FlyDive because of these threats.

32. FlyDive has been severely prejudiced by trying to operate under a persistent threat of litigation. FlyDive is a new company trying to expand its market niche with new distributors and business partners. FlyDive believes that there is more than enough room in the market for both it and Zapata Industries, but FlyDive cannot grow if potential business partners fear that the entire FlyDive operation will be shut down in an imminent patent litigation, as Zapata Industries has vowed to do. Because of the widely-known significant corporate and personal assets of Messrs. Gerszberg and Zapata, FlyDive – along with FlyDive's potential business partners – have every reason to believe that ZapIP and ZipH2O can and will follow through on their threats. Indeed, now that FlyDive has acquired Jetpack Enterprises, FlyDive is *already currently being sued* by Zapata Industries in this District.

33. FlyDive does not infringe the Li and Zapata Patents, and in any event, those patents are invalid, as discussed below. FlyDive herein seeks relief under the Declaratory Judgment Act to remove the oppressive threat of litigation against it so that it can properly and fairly conduct its business without harassment.

## CLAIM I
### (Declaration of Non-Infringement of the Li Patents)

34. The preceding paragraphs are incorporated here by reference.

35. There is an actual controversy between the parties as to the question of infringement of the Li Patents by the FlyDive X-Board. ZapIP is already suing Jetpack Enterprises over the Stratospheric Jetblade, which is a similar device. Both Mr. Gerszberg and Mr. Zapata have threatened FlyDive and FlyDive's business partners, stating that they would use the patent portfolios to shut down FlyDive.

36. With respect to the '301, '772 and '867 Patents, Defendants cannot show that the FlyDive X-Board has thrust nozzles above the center of gravity, as called for by the patent claims.

37. With respect to the '914 Patent, as a non-limiting example, the X-Board does not use any electrically conductive connectors or throttle controller, as those terms are defined in the patent.

38. With respect to the '876 Patent, as a non-limiting example, the X-Board does not bias nozzles to any position, as those terms are defined in the patent.

39. With respect to the '905 Patent, as a non-limiting example, the X-Board does not have a first plurality of substantially circular electrical conductors attached to the first housing, as those terms are defined in the patent.

40. FlyDive therefore seeks a declaration that the X-Board Board (either alone or used with a personal water craft) does not infringe the Li Patents.

## CLAIM II
### (Declaration of Invalidity of the Li Patents)

41. The preceding paragraphs are incorporated here by reference.

42. There is an actual controversy between the parties as to the question of infringement of the Li Patents by the FlyDive X-Board, and hence whether the Li Patents are valid. ZapIP is already suing Jetpack Enterprises over the Stratospheric Jetblade, which is a similar device. Both Mr. Gerszberg and Mr. Zapata have threatened FlyDive

and FlyDive's business partners, stating that they would use the patent portfolios to shut down FlyDive.

43. Each claim of the Li Patents is invalid for failure to comply with one or more provisions of 35 U.S.C. § 101, et seq., including without limitation §§ 101, 102, 103 and/or 112.

44. In particular, numerous prior art references exist that render the Li Patents anticipated and/or obvious, including the prior art that has been cited in the reexaminations of the '772 and '867 Patents (which are public record incorporated herein by reference). The '772 Patent also should not have issued in light of the rejections entered during prosecution of the '301 Patent. Furthermore, a water-propelled jetpack of exactly the same kind claimed by the Li Patents was already invented and publicly disclosed in the 1990s before Mr. Li's purported invention thereof. Sample images of this device are shown below, as well as drawings of its intended use with water-borne vessels to supply the pressurized thrust water.






45. The subject matter of the claims of the Li Patents is also not adequately enabled or described pursuant to Section 112 in the written specification, which does not sufficiently explain to one of skill in the art how the claimed device is to be constructed to allow the claimed performance, and does not show that the inventor has possession of

11

**FLYDIVE FIRST AMENDED COMPLAINT**
**CASE NO: 8:16-CV-1607-CJC-JCG**

4850-1682-4904.1

the claimed features at the time of filing of the applications, or back to the claimed priority dates. In particular, upon information and belief, substantial development of the claimed device occurred after the priority date of the application, and the applications do no explain how to actually construct the device such that it would actually function. Additionally, the Li Patent claims contain many ambiguous terms that are not adequately defined in the specification and which are thus indefinite. To the extent that the Li Patent claims are construed to cover an inoperable device, the Li Patents are invalid under Section 101.

46. The Li Patents are invalid for improper inventorship. Ideas claimed in the patents were conceived by persons other than Mr. Li, including Mr. Frazier Grandison.

47. The foregoing are non-limiting examples of bases for invalidity of the Li Patents, and FlyDive expressly reserves the right to assert additional bases as their invalidity investigation continues.

48. FlyDive seeks a declaration that the Li Patents are invalid.

## CLAIM III
### (Declaration of Non-Infringement of the Zapata Patents)

49. The preceding paragraphs are incorporated here by reference.

50. There is an actual controversy between the parties as to the question of infringement of the Zapata Patents by the FlyDive X-Board. ZipH2Os' affiliate, ZapIP, is already suing Jetpack Enterprises over the Stratospheric Jetblade, which is a similar device. Both Mr. Gerszberg and Mr. Zapata have threatened FlyDive and FlyDive's business partners, stating that they would use the patent portfolios to shut down FlyDive.

51. As a non-limiting example, with respect to the '805 Patent, the X-Board does not have any "free secondary nozzles" as claimed.

52. As a non-limiting example, with respect to the '104 Patent, the X-Board does not have a "platform" as that term is defined in the patent, among other features.

53. As a non-limiting example, with respect to the '017 Patent, the X-Board does not have "protective projections" as that term is defined in the patent, among other

features.

54. As a non-limiting example, with respect to the '943 Patent, the X-Board does not use the claimed strap as that term is defined in the patent.

55. As a non-limiting example, with respect to the '991 Patent, the X-Board does not divert pressurized fluid toward a longitudinal recess, or have any fitting configured to enable free rotation, as those terms are defined in the patent.

56. FlyDive therefore seeks a declaration that the X-Board (either alone or used with a personal water craft) does not infringe the Zapata Patents.

## CLAIM IV
### (Declaration of Invalidity of the Zapata Patents)

57. The preceding paragraphs are incorporated here by reference.

58. There is an actual controversy between the parties as to the question of infringement of the Zapata Patents by the FlyDive X-Board, and hence whether the Zapata Patents are valid. ZipH2Os' affiliate, ZapIP is already suing Jetpack Enterprises over the Stratospheric Jetblade, which is a similar device. Both Mr. Gerszberg and Mr. Zapata have threatened FlyDive and FlyDive's business partners, stating that they would use the patent portfolios to shut down FlyDive.

59. Each claim of the Zapata Patents is invalid for failure to comply with one or more provisions of 35 U.S.C. § 101, et seq., including without limitation §§ 101, 102, 103 and/or 112.

60. In particular, numerous prior art references exist that render the claims obvious, including specifically the claims of the '805, '104 and '017 Patents. These include all the prior art disclosed in Claim II above, further in view of the extensive testing of foot-mounted jet propulsion that was already done by the U.S. government in the mid-Twentieth Century. For example, the National Advisory Committee for Aeronautics did extensive research on hose-tethered, foot-mounted jet propulsion in the 1950s and 1960s, sample images of which are shown below.





61. A review of the file wrappers for the Zapata Patents – in particular for the '104 Patent – reveals that the Patent Office deemed the only point of novelty to be a pivot joint for the attachment hose, yet this feature was already present in the prior art not considered by the Patent Office, including equipment that had been manufactured by Jetlev prior to the purported date of invention of the Zapata Patents. Indeed, each of the '805, '104 and '017 Patents are nothing more than an obvious modification of technology previously disclosed in the Li Patents.

**FLYDIVE FIRST AMENDED COMPLAINT**
CASE NO: 8:16-CV-1607-CJC-JCG

4850-1682-4904.1

62. Each of the '805, '104 and '017 Patents is also invalid because the claims are drafted so broadly as to encompass a vast array of watercraft that have long been in the prior art. Most of the claims do not contain any requirement that the claimed device be capable of flight, and hence they literally describe basic watercraft such as Jet Skis and boats that expel fluid to propel themselves over water, without flight. This overbreadth of the claims also renders the patents indefinite, and not supported by a proper written description.

63. With respect to the '943 and '991 Patents, these are directed to configuring a personal water craft with a hose line that runs from the rear exhaust to the bow, which then allows hook-up to a jetpack. However, the Patent Office already determined in the prosecution of the patents that conducting water toward the bow of a personal water craft was in the prior art and not inventive. Thus, the sole remaining aspect is the hook-up at the front of the bow, which cannot be claimed as inventive because it is an obvious addition, and one for which there are replete examples in the prior art of connectors and hose fasteners.

64. Additionally, the Zapata Patent claims contain many ambiguous terms that are not adequately defined in the specifications and which are thus indefinite. To the extent that the Zapata Patent claims are construed to cover inoperable devices, the Zapata Patents are invalid under Section 101.

65. The foregoing are non-limiting examples of bases for invalidity of the Zapata Patents, and FlyDive expressly reserves the right to assert additional bases as their invalidity investigation continues.

66. FlyDive seeks a declaration that the Zapata Patents are invalid.

## PRAYER FOR RELIEF

WHEREFORE, FlyDive hereby respectfully requests that this Court enter a judgment in their favor and against ZapIP and ZipH2O by granting the following relief:

a. That the Court find and declare that FlyDive has not infringed any valid, enforceable claim of the Li or Zapata Patents;

b. That the Court find and declare that each claim of the Li and Zapata Patents is invalid;

c. That the Court grant a permanent injunction restraining ZapIP and ZipH2O and their respective affiliates, parents, subsidiaries, officers, agents, servants, employees, attorneys, and any other persons acting on its behalf or in concert with them, from charging or threatening, orally or in writing, that the Li or Zapata Patents have been infringed by FlyDive;

d. That the Court find and declare this to be an exceptional case under 35 U.S.C. § 285 and award FlyDive its reasonable attorneys' fees;

e. That the Court award to FlyDive their costs associated with this case; and

f. That the Court award of any and all other relief the Court finds just and proper.

Dated: May 8, 2017         **FOLEY & LARDNER LLP**

By: */s/ Jean-Paul Ciardullo*
　　Jean-Paul Ciardullo

*Attorneys for FlyDive, Inc.*

## JURY DEMAND

FlyDive requests a trial by jury for all issues so triable.

Dated: May 8, 2017　　　　　　　**FOLEY & LARDNER LLP**

　　　　　　　　　　　　　　　By: */s/ Jean-Paul Ciardullo*
　　　　　　　　　　　　　　　　　Jean-Paul Ciardullo

　　　　　　　　　　　　　　　*Attorneys for FlyDive, Inc.*